Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Sean K. Collins
*pro hac vice application forthcoming*
**Law Offices of Sean K. Collins**
184 High Street, Suite 503
Boston, MA 02110
Telephone: 855-693-9256
Fax: 617-227-2843
sean@neinsurancelaw.com

Ex Kano S. Sams II
*pro hac vice application forthcoming*
**Glancy Prongay & Murray LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Fax: 310-201-9160
esams@glancylaw.com

Mala M. Rafik
*pro hac vice application forthcoming*
B.B.O. # 638075
**Rosenfeld & Rafik, P.C.**
184 High Street, Suite 503
Boston, MA 02110
Telephone: 617-723-7470
Fax: 617-227-2843
mmr@rosenfeld.com

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| S.F., and E.F.,<br><br>        Plaintiffs,<br><br>vs.<br><br>CIGNA HEALTH and LIFE INSURANCE COMPANY, CIGNA BEHAVIORAL HEALTH, the SLALOM LLC HEALTHCARE BENEFIT PLAN, and DOES 1-1000,<br><br>        Defendants. | CLASS ACTION COMPLAINT<br><br>Case No. 2:23-cv-213 |

Plaintiffs S.F. and E.F., through their undersigned counsel and on behalf of themselves

and the similarly situated class of individuals, complain and allege against Defendants Cigna

1

Health and Life Insurance Company and Cigna Behavioral Health (collectively "Defendants" or "Cigna"), the Slalom LLC Healthcare Benefit Plan, and Does 1-1000 (collectively "Defendant Plans") as follows:

**NATURE OF THE CASE**

This proposed class action addresses Cigna's improper behavior as insurer and administrator of ERISA health benefit plans in categorically denying coverage for treatment of mental health and substance use disorders provided in State of Utah Health and Human Services licensed "Outdoor Youth Programs" ("OYP"). *See* Utah Admin. Code R501-8.

Treatment in OYP involves intermediate inpatient mental health and substance use disorder treatment provided to adolescents in outdoor behavioral healthcare programs licensed by Utah. When claims for treatment in OYP are submitted to Cigna, they are denied. In denying coverage for OYP, Cigna breaches the terms of the ERISA plan documents under which it acts as insurer or administrator because it wrongly denies access to coverage for medically necessary services in violation of ERISA.

Cigna's exclusion of OYP also violates the Mental Health Parity and Addiction Equity Act ("MHPAEA"). This is because Cigna imposes more restrictive treatment limitations on benefits for mental health and substance use disorders than it imposes on analogous levels of care for medical and surgical conditions. Cigna's internal Complementary and Alternative Medicine policy ("the Policy") has a section that refers to "wilderness therapy." That section indicates that research is ongoing but that programs like OYP have not been proven to be any *more* effective than clinical alternatives such as traditional inpatient residential treatment in a brick-and-mortar location. Cigna's exclusion of OYP is inconsistent with the language of the plan document and the Policy which simply requires that requested treatments be shown to be

"safe and effective" to warrant coverage under the ERISA plan. The treatment does not need to be more effective than a more traditional alternative, contrary to Defendants' claims.

Cigna's wrongful denial of coverage for OYP calls for remedies under both ERISA and MHPAEA for the Plaintiffs and all similarly situated individuals.

## PARTIES, JURISDICTION AND VENUE

1. S.F. and E.F. are natural persons residing in King County, Washington. S.F. is E.F.'s father.

2. Cigna is an insurance company headquartered in Bloomfield, Connecticut. It was the third-party claims administrator, as well as the fiduciary, for a self-funded employee welfare benefits plan ("the Plan") governed by 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA") that provided benefits to S.F. and E.F.

3. Slalom LLC Healthcare Benefit Plan is an employee welfare benefits plan sponsored by Slalom LLC for its employees and their dependents and is governed by ERISA.

4. Defendants Does 1-1000 represent the other yet to be identified plans who contracted with Cigna to provide fully insured health benefits and/or administrative services in connection with a self-funded plan, to their employees under ERISA. Does 1-1000 can be identified after a review of Cigna's records.

5. S.F. was a participant in the Plan and E.F. was a beneficiary of the Plan at all relevant times. S.F. and E.F. continue to be participants and beneficiaries of the Plan.

6. E.F. received medical care and treatment at Open Sky Wilderness Therapy ("Open Sky") an OYP licensed treatment program, from October 5, 2019, to January 1, 2020. Open Sky is a licensed and accredited outdoor behavioral healthcare program with locations in both

Utah and Colorado. The location of treatment in the Open Sky program switches

depending on the time of year but during the time E.F. was treated he was in Utah.

7.  Cigna, acting as agent and fiduciary for the Plan, denied claims for payment of E.F.'s

medical expenses in connection with his treatment at Open Sky.

8.  This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C.

§1331.

9.  Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on

ERISA's nationwide service of process and venue provisions, because Slalom LLC, the

sponsor of Plaintiffs' ERISA plan, has an office in Salt Lake City, and because Cigna has

significant business activities and business offices in Utah.

10. The remedies the Plaintiffs seek, for themselves and for all similarly situated individuals,

are for the benefits due under the terms of the Cigna issued and/or administered welfare

benefit plans, for appropriate equitable relief based on the Defendants' violation of

MHPAEA, an award of prejudgment interest, and an award of attorney fees and costs

pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### OYP THERAPY

11. OYP in Utah provide comprehensive inpatient sub-acute treatment in an outdoor setting

for mental health and substance use disorders.

12. These programs provide their mental health and substance use disorder treatment using

trained personnel and licensed clinical professionals that satisfy Utah state regulatory

standards and requirements and meet generally accepted standards of care for outdoor

behavioral healthcare programs.

13. OYPs are licensed under Utah state law to treat mental health and substance use disorders.

14. Many OYPs are also accredited by national organizations such as The Joint Commission, f/k/a the Joint Commission on Accreditation of Healthcare Organizations, the Commission on Accreditation of Rehabilitation Facilities ("CARF") or the Association for Experiential Education ("AEE"). Accreditation of OYPs provides greater assurance that the OYP operates under generally accepted standards of care and to ensure the safety and welfare of individuals in the OYP.

15. Increasing numbers of studies of outdoor behavioral healthcare programs over the last few decades have demonstrated that they are effective at treating the mental and behavioral healthcare needs of individuals to at least the same degree as other types of sub-acute inpatient treatment programs.

16. Health care professionals and insurers have recognized the increasing evidence of the effectiveness of these programs.

17. In 2016 the National Uniform Billing Committee, part of the American Hospital Association, provided a separate billing code for outdoor behavioral healthcare programs, of which OYPs are an example, to use in billing payors of treatment for mental health and substance use disorders.

18. Increasing numbers of outdoor behavioral healthcare programs are becoming accredited under The Joint Commission, CARF, or AEE and the number of accrediting organizations evaluating and accrediting outdoor behavioral healthcare programs under their standards is also increasing.

19. In addition, states like Utah are improving and increasing the strength of their regulatory standards to ensure outdoor behavioral healthcare programs provide an effective and safe treatment setting and that the clinical needs for individuals being treated are addressed. The administrative regulations found in Utah Admin. Code R501-8 are an example of the regulatory standards applied to outdoor behavioral healthcare programs operating in Utah.

## CIGNA'S EXCLUSION OF UTAH's OYP PROGRAMS

20. Cigna provides claims administration services and group health insurance to thousands of welfare benefit plans sponsored by employers across the country. It is one of the largest health insurers and claims administrators in the United States.

21. Each of the welfare benefit plans Cigna insures or administers provides coverage for mental health and substance use disorder treatment as outlined in the ERISA plan document and as required by federal law.

22. When individuals request coverage for mental health and substance use disorder treatment under a Cigna insured or administered plan, claims are submitted to Cigna for processing and payment or denial.

23. Cigna systematically denies coverage for mental health and substance use disorder treatment provided at Utah's OYP programs.

24. As a result of Cigna's wrongful categorical denial of coverage for OYP programs, Cigna shifts the costs of safe and effective treatment from itself to individuals who are then, wrongly, required to pay the complete costs of OYP program treatment. This allows only the financially privileged access to this critical level of mental health care.

25. This case seeks correction of Cigna's practice of excluding coverage for OYP program treatment of mental health and substance use disorders for the Plaintiffs and for all similarly situated individuals for whom OYP program coverage has been improperly denied.

## DEFINITION OF THE PROPOSED CLASS

26. The classes[1] in this matter are defined as follows:

**Damage Class**: All beneficiaries covered by a Cigna insured or administered ERISA governed health benefit plan who had a claim for coverage at a Utah licensed OYP denied on grounds that Utah OYPs are not covered providers.

**Injunctive Relief Class**:  All beneficiaries covered by a Cigna insured or administered ERISA governed health benefit plan.

27. The proposed classes are composed of the individuals covered by ERISA governed Cigna insurance policies or Cigna-administered health benefit plans whose OYP claims have been wrongfully denied based on Cigna's exclusion of coverage for OYP programs.

## FACTS RELATING TO THE INDIVIDUAL CLASS REPRESENTATIVE

### E.F.'s Developmental History and Medical Background

28. In the fall of 2017, E.F. began seeing a therapist due to ongoing struggles with depression. In December of 2017, E.F. confided to his school counselor that he was considering suicide. E.F. confessed that he had already attempted suicide by hanging in a nearby park, but the branch he had used broke under his weight.

29. E.F. started meeting with a psychologist and was put on suicide watch. Shortly afterwards on December 7, 2017, E.F. left school without permission and consumed a large quantity

---

[1] Plaintiffs specifically reserve the right to amend these definitions.

of alcohol. When he returned, school staff took notice of his inebriated state and suspended him for three days. E.F. then began meeting with a substance abuse specialist.

30. E.F. appeared to stabilize, at least for a time, and was again able to participate in activities like baseball.

31. On September 22, 2018, the police were called to a scene where E.F. and his friends were engaging in loud and dangerous behavior. E.F. was hospitalized for a drug overdose.

32. E.F. continued to use drugs to cope with his depression although, when confronted, he would deny any drug use. E.F. was caught with marijuana and was forced to attend a substance abuse program.

33. S.F. began drug testing E.F. multiple times a week, but this had the result of E.F. seeking out harder drugs which he believed were less likely to show up on his drug tests. E.F. also cheated the tests by using "clean" urine which he carried with him in a bottle.

34. On May 22, 2019, E.F. was expelled from school and charged with drug possession with intent to sell after a very large quantity of marijuana was discovered in his car. On August 24, 2019, E.F. got drunk and high with friends and had to be restrained by S.F. when he attempted to get into his car to drive away. E.F. became very angry and threatened suicide and was taken to the emergency room for a psychological evaluation.

35. E.F. was diagnosed with an opioid addiction and was placed in group therapy. He was frequently very combative and would often threaten his family and friends.

36. E.F. would often express remorse for his behaviors afterward but continued to go through the same cycle of aggression again and again. E.F.'s behaviors became so extreme that his younger sister felt unsafe and moved out of the house to stay with a family friend.

37. E.F. punched holes in the walls, broke doors, threatened suicide, and continued to abuse drugs and alcohol. On September 28, 2019, E.F. stated that he was going to his homecoming dance but was later found by the police unresponsive in his car. Officers had to break the window and he was rushed to the hospital by paramedics.

38. At the hospital, E.F. was treated for lung failure brought on by his abuse of THC, cocaine, and Percocet. E.F. was not receiving oxygen to his brain and had to be intubated. He then spent three days in the intensive care unit. E.F. later admitted that this had been another suicide attempt.

39. Shortly after E.F. got home he attempted to break into a locked safe in the house to obtain some prescription painkillers. He was caught by S.F. and admitted that he had once again been attempting suicide.

**Open Sky**

40. E.F. was admitted to Open Sky Wilderness Therapy ("Open Sky") the next day, October 5, 2019, based on the clinical recommendations of his treatment team.

41. In a letter dated May 1, 2020, Cigna denied payment for E.F.'s treatment at Open Sky. The letter gave the following justification for the denial:

> The clinical basis for this decision is: Based upon current available information, coverage for the requested service cannot be approved because there is insufficient scientific evidence to demonstrate the safety and/or effectiveness of Wilderness Therapy Programs. At the present time, per Medical Coverage Policy Complementary and Alternative Medicine (0086), this treatment falls under the category of experimental/investigational/unproven. Your benefit plan does not cover experimental/investigational/unproven services.

> Please note that claims for therapeutic services rendered by an independently licensed health care professional for the treatment of a mental health and/or substance use disorder while residing at the wilderness program may be submitted for benefit coverage subject to the terms and conditions of the Cigna customer's health plan.

42. On September 9, 2020, S.F. submitted a level one appeal of the denial of payment for E.F.'s treatment.

43. S.F. requested to be provided with a physical copy of all documentation related to the appeal and the initial decision, including case notes.

44. S.F. contended that OYP's were not experimental and that there was indeed coverage available under the terms of the benefit plan document for the treatment E.F. received at Open Sky.

45. S.F. wrote that Open Sky met the Plan's definition of an "Other Health Care Facility" which the benefit plan described as, "including, but are not limited to, licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities."

46. He questioned on what basis Cigna had determined OYP's were experimental. He pointed out that Open Sky was a licensed and accredited facility which met the requirements set by both Utah and Colorado licensing authorities.[2]

47. S.F. stated that while the denial letter referenced Cigna's Complementary and Alternative Medicine policy ("the Policy"), the language in that document should not have been used to evaluate E.F.'s treatment as the Policy acknowledged that its terms "may differ significantly" from the language of the benefit plan on which the coverage was based, and in the event of conflict the benefit plan language took precedence.

48. S.F. quoted the definition of experimental and investigational services from his benefit plan which stated:

> Experimental, investigational and unproven services are medical, surgical, diagnostic, psychiatric, substance use disorder or other health care technologies, supplies, treatments, procedures, drug or Biologic therapies or devices that are determined by the utilization review Physician to be:

---

[2]Open Sky has campuses in both states.

- not approved by the U.S. Food and Drug Administration (FDA) or other appropriate regulatory agency to be lawfully marketed;
- not demonstrated, through existing peer-reviewed, evidence-based scientific literature to be safe and effective for treating or diagnosing the condition or Sickness for which its use is proposed;
- the subject of review or approval by an Institutional Review Board for the proposed use except as provided in the "Clinical Trials" sections of this plan; or
- the subject of an ongoing phase I, II or III clinical trial, except for routine patient care costs related to qualified clinical trials as provided in the "Clinical Trials" section of this plan.

In determining whether drug or Biologic therapies are experimental, investigational and unproven, the utilization review Physician may review, without limitation, U.S. Food and Drug Administration approved labeling, the standard medical reference compendia and peer-reviewed, evidence-based scientific literature (emphasis in original).

49. S.F. argued that under this language Open Sky was not an experimental or investigational service. He wrote that Open Sky was licensed by the appropriate state regulatory agencies and that OBH programs had been issued a unique revenue code by the National Uniform Billing Committee to use in billing payors for their services. He stated that if Open Sky was experimental or investigational this would not have happened.

50. S.F. contended that Cigna's denial was a violation of MHPAEA. He stated that MHPAEA compelled insurers to offer coverage for behavioral health benefits at parity with comparable medical or surgical benefits. S.F. identified skilled nursing, rehabilitation, and hospice facilities as some of the medical or surgical analogs to the mental health treatment E.F. received at Open Sky.

51. He argued that Cigna was imposing treatment limitations for E.F.'s treatment at Open Sky. He noted that Cigna's denial letter allowed him to submit claims for "therapeutic services rendered by an independently licensed health care professional" while E.F. was at Open Sky. He contended that if Cigna truly believed the services offered by Open Sky

were experimental it would not offer to cover any portion of the services E.F. received in an outdoor setting.

52. He voiced his doubt that Cigna would deny care in a skilled nursing, rehabilitation, or hospice facility on the grounds that it was experimental or investigational, nor would it deny most of the services provided but allow certain portions "rendered by an independently licensed health care professional" to be covered as Cigna had offered for E.F.'s treatment.

53. He argued that Cigna was also discriminating against OYPs based on facility type and provider specialty as was evident by Cigna's categorical denial of OYPs.

54. S.F. requested that Cigna perform a MHPAEA compliance analysis and provide him with physical copies of the results of this analysis as well as any documentation used.

55. S.F. asked that in the event Cigna upheld the denial that it provide him with a copy of all documents under which the Plan was operated including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination as well as their medical or surgical equivalents (regardless of whether these were used to evaluate the claim), any reports or opinions concerning the claim from any physician or other professional, and the names, qualifications, and denial rates of all individuals who reviewed or were consulted about the claim.

56. In a letter dated October 8, 2020, Cigna upheld the denial of payment for E.F.'s treatment. The letter reused the same denial justification used in the May 1, 2020, letter

nearly verbatim and made no attempt to address any of the arguments S.F. raised during the appeal process, nor did Cigna produce any of the documents S.F. requested.

## **CLASS ALLEGATIONS**

57. As a result of these actions, Cigna systematically and improperly denies coverage for treatment of mental health and substance use disorders provided by OYPs in Utah.

58. Cigna's categorical exclusion of OYPs violates the terms of the ERISA plans that fall within the class definition, the fiduciary duties Cigna owes the Plaintiffs under 29 U.S.C. §§ 1104(a)(1)(A) and (a)(1)(D), and MHPAEA.

59. Based on information and belief, in addition to the Plaintiffs, more than 100 individuals covered by Cigna insured or administered ERISA governed welfare benefits plans have had claims for coverage of OYPs wrongly denied by Cigna based on its categorical exclusion.

60. Hundreds more individuals are covered under Cigna insured or administered ERISA governed welfare benefit plans and, absent Court intervention, will act Cigna's will incur significant financial loss because of Cigna's improper exclusion of coverage for OYPs.

61. Plaintiffs seek certification under F.R.C.P. 23(b)(1), (b)(2) and (b)(3) of a class of all current and former participants and beneficiaries of ERISA governed health benefit plans insured and administered by Cigna.

62. The proposed class action is appropriate for certification under F.R.C.P. 23(a)(1) because tens of thousands of individuals are covered under ERISA plans and the hundred or more individuals whose claims for coverage for treatment in OYPs have been wrongly denied are so numerous that joinder of each of the individuals as a plaintiff is impractical.

63. The proposed class action is appropriate for certification under F.R.C.P. 23(a)(2) because there are questions of law or fact that are common to the class, namely, whether Cigna's categorical exclusion of Utah licensed OYP claims is correct under the terms of the ERISA plan documents, the Policy, and under MHPAEA.

64. Certification of the class action is proper under F.R.C.P. 23(a)(3) because the claims of the Plaintiffs are typical of the members of the proposed class. This is true because all prospective class members will have sought coverage of treatment in OYPs and Cigna will have denied coverage for that treatment based on the OYP exclusion.

65. The requirements of F.R.C.P. 23(a)(4) are satisfied in this case because the named representatives of the proposed class will fairly and adequately protect the interests of the proposed class and Plaintiffs' counsel has adequate experience and background in both health benefit litigation and consumer class action litigation to represent the proposed class.

66. Certification of a class action under F.R.C.P. 23(b)(1) is proper because prosecution of separate actions by all the individual members of the proposed class would create a risk of inconsistent and varying adjudication with respect to the individuals that would result in incompatible standards of conduct for Cigna. This is an especially important factor in ERISA welfare benefit cases because Cigna is charged with putting in place claim processes and safeguards to ensure that benefit claim determinations are made in accordance with ERISA plan documents and that governing plan language is applied consistently for similarly situated claimants.

67. Similarly, certification of a class action under F.R.C.P. 23(b)(1) is also proper because if this Court were to only issue a decision on the legal issue raised in Plaintiffs' claim on an

individual basis, it would be dispositive of the interests of the other members not parties to the individual adjudication or would substantially impair or impede their ability to protect their interests since legal precedent would be created on the interpretation of ERISA plan benefit language common to all class members.

68. Certification of a class action under F.R.C.P. 23(b)(2) is also appropriate because whether Cigna's uniform practice of denying OYP claims is proper is an issue that applies generally to the entire proposed class making final injunctive or declaratory relief appropriate.

69. Certification of a class action under F.R.C.P. 23(b)(3) is also appropriate because questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

70. To that end, (1) upon information and belief, individual class members' interest in controlling and litigating separate actions would be low for a number of reasons including the difficulty of retaining and paying experienced counsel to litigate their claims; (2) it is highly desirable to concentrate this litigation in this particular forum so as to ensure that every member of this highly vulnerable population receives the coverage to which they are entitled under their plans; and (3) there likely would be little, if any, difficulties encountered in the management of this case as a class action.

## **FIRST CAUSE OF ACTION**

### **(Claim for Benefits Against all Defendants under 29 U.S.C. § 1132(a)(1)(B))**

71. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

72. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Cigna to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the ERISA plan. 29 U.S.C. § 1104(a)(1).

73. ERISA also requires Cigna, as an ERISA plan fiduciary, to discharge its duties "…in accordance with the documents and instruments governing the plan …."

74. Cigna breached its obligations when it failed to act solely in the Plaintiffs' interest and for the exclusive purpose of providing them benefits as required under the terms of the ERISA benefit plan and in a manner that provided a full and fair review of the Plaintiffs' claims as required by ERISA, 29 U.S.C. § 1133.

75. Cigna violates the terms of the ERISA benefit plan for proposed class members when it systematically denies coverage for OYP.

76. The Plaintiffs, for themselves and the class, are entitled to this Court's order that Cigna's exclusion of coverage for Utah's OYPs violates the terms of the ERISA plans and the Policy, that the Plaintiffs and the class members are entitled to payment of the OYP expenses that Cigna wrongly denied, and for an award of prejudgment interest and attorney fees under 29 U.S.C. § 1132(g).

## <u>SECOND CAUSE OF ACTION</u>

### **(Claim for Violation of MHPAEA Against all Defendants under 29 U.S.C. § 1132(a)(3))**

77. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

78. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

79. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of analogous levels of medical and surgical disorders.

80. Specifically, MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits. 29 U.S.C. § 1185a(a)(3)(A)(i)

81. MHPAEA also prohibits separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C.§ 1185a(a)(3)(A)(ii).

82. Impermissible treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

83. Comparable benefits offered by the Plaintiffs' ERISA plan for medical and surgical treatment analogous to the benefits the Plan excluded for E.F.'s treatment at Open Sky include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

84. For none of these types of medical or surgical treatment does Cigna exclude coverage based on geographic location, facility type, provider specialty, or other criteria in the manner Cigna excluded coverage of treatment for E.F. at Open Sky.

85. Cigna's categorical exclusion of Utah OYPs violates MHPAEA because Cigna does not categorically exclude coverage for medical treatment provided in an outdoor setting.

86. In addition, Cigna imposed more restrictive treatment limitations in evaluating whether OYPs are covered under the terms of the ERISA benefit plan and under the Policy than the way it evaluated whether comparable medical and surgical treatment will be covered.

87. This is revealed by Cigna's requirement that for OYPs to be considered for payment, they had to show they were more effective than alternative inpatient sub-acute treatment for mental health and substance use disorders.

88. Cigna does not require that medical treatment comparable to OYPs provide better results and outcomes than existing medical treatment for the same medical condition to be covered under the ERISA plans it insures or administers.

89. In addition, Cigna does not categorically exclude from coverage treatment from medical programs that have been licensed by applicable state agencies, for which a billing code has been provided by the National Uniform Billing Committee, or for which accreditation by The Joint Commission, CARF, or AEE are available.

90. The difference in Cigna's practices in how it evaluates the safety and effectiveness of OYPs compared to how it evaluates analogous medical treatment results in a disparity in treatment limitations because Cigna denies coverage for OYPs while paying for treatment of medical conditions provided at comparable levels of care.

91. In this manner, Cigna violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the ERISA benefit plans, as written or in operation, use processes, strategies, and evidentiary standards to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, evidentiary standards or other factors used to limit coverage for medical treatment in the same classification.

92. The violations of MHPAEA by Cigna are breaches of fiduciary duty and give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that Cigna's actions violate MHPAEA;

(b) An injunction ordering Cigna to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of Cigna's Policy to comply with MHPAEA;

(d) An order requiring disgorgement of funds obtained or retained by Cigna as a result of its violation of MHPAEA;

(e) An order requiring an accounting by Cigna of the funds it has wrongly withheld from participants and beneficiaries as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring Cigna to provide payment to participants and beneficiaries as make-whole relief for their losses;

(g) An order equitably estopping Cigna from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from Cigna to the Plaintiffs for their losses arising out of Cigna's violation of MHPAEA.

93. In addition, Plaintiffs are entitled to an award of prejudgment interest and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

//

//

## THIRD CAUSE OF ACTION

**(Declaratory Relief under the Declaratory Judgment Act Against All Defendants (28 U.S.C. §2201, et seq.) – Injunctive Class)**

94. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

95. Plaintiffs bring this claim for relief on behalf of themselves and the members of the Injunctive Class. An actual controversy has arisen and now exists between Plaintiffs and the members of the Injunctive Class, on the one hand, and Defendants, on the other hand, concerning their respective rights and duties in that Plaintiffs and the members of the Injunctive Class contend that Defendants are not permitted to categorically deny claims for OYPs.

96. A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiffs, the members of the Injunctive Class, and Defendants may ascertain their respective rights and duties with respect to Defendants' obligations to pay OYP claims.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs, on behalf of the putative class members, pray for judgment against Cigna as follows:

1.      For an Order certifying the proposed classes under F.R.C.P. 23(b)(1), (b)(2) and (b)(3);

2.      For the relief outlined in the First and Second Causes of Action outlined above;

//

//

3.      Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4.      For such further relief as the Court deems just and proper.

DATED this 31st day of March, 2023.

THE PLAINTIFFS, BY THEIR ATTORNEYS,


/s/ Brian S. King_____