Brian S. King, #4610
Brent Newton, #6950
Samuel M. Hall, #16066
Andrew J. Somers, #19078
**BRIAN S. KING, P.C.**
420 East South Temple, Ste 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com
andrew@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| S.F., E.F., J.S. and R.R., on BEHALF of THEMSELVES and OTHER SIMILARLY SITUATED INDIVIDUALS,<br><br>            Plaintiffs,<br><br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA BEHAVIORAL HEALTH, INC., the SLALOM LLC HEALTHCARE BENEFIT PLAN, the TIDES FOUNDATION HEALTH & WELFARE PLAN, and DOES 1-1000,<br><br>            Defendant. | **PLAINTIFFS' OPPOSITION TO CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA BEHAVIORAL HEALTH, SLALOM LLC HEALTHCARE BENEFIT PLAN, and TIDES FOUNDATION HEALTH AND WELFARE PLAN'S MOTIONS TO DISMISS**<br><br>Case Number 2:23-cv-00213-DAK-JCB<br><br>District Judge Dale A. Kimball<br>Magistrate Judge Jared C. Bennett |

Plaintiffs S.F., E.F., J.S., and R.R. submit this motion in opposition to the Motions to

Dismiss filed by Defendants Cigna Health and Life Insurance Company and Cigna Behavioral

Health[1] (collectively, "Cigna"), the Tides Foundation Health & Welfare Plan[2] ("Tides" or "the

Tides Plan"), and the Slalom LLC Healthcare Benefit Plan[3] ("Slalom" or "the Slalom Plan,"

collectively, "the Plans") (collectively, "Defendants"). Defendants move for dismissal under

rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim

and lack of subject matter jurisdiction. Defendants' motions fail. As shown below, Plaintiffs

sufficiently pleaded their ERISA 29 U.S.C. §1132(a)(1)(B), Mental Health Parity and Addiction

Equity Act ("MHPAEA" or "Parity Act"), and Declaratory Judgment Act claims. This Court

should consequently deny Defendants' motions.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require a complaint to prove a "short and plain

statement of the claim showing that the pleader is entitled to relief."[4] A complaint consequently

"need[s] not provide detailed factual allegations," but needs only "give just enough factual detail

to provide [defendants] fair notice of what the… claim is and the grounds upon which it rests."[5]

Under this standard, a district court, upon motion, may dismiss a claim that fails to state a claim

upon which relief may be granted.[6] When evaluating a motion to dismiss, the reviewing court,

"draw[ing] on its judicial experience and common sense," must "accept all well-pleaded facts as

true and view them in the light most favorable to the plaintiff."[7] When so viewed, a complaint

will survive a motion to dismiss when the allegations "'state a claim to relief that is plausible on

---

[1] ECF Doc. No. 30.

[2] ECF Doc. No. 49.

[3] ECF Doc. No. 39.

[4] Fed. R. Civ. P. 8(a)(2).

[5] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

[6] *See* Fed. R. Civ. P. 12(b)(6).

[7] *Jordan-Arapahoe, LLP v. Bd. Of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

its face.'"[8] A claim is plausible on its face when the pleaded facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] In other words, the complaint must allege "something more than a sheer possibility that a defendant has acted unlawfully."[10]

Rule 8 also allows parties to plead alternative, hypothetical, and inconsistent claims, requiring a "demand for the relief sought, which may include relief in the alternative or different types of relief."[11] Rule 8 permits parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."[12] And Rule 18 states that "[a] party asserting a claim… may join, as independent or alternative claims, as many claims as it has against an opposing party" and "may join two claims even though one of them is contingent on the disposition of the other[.]"[13]

Plaintiffs have met this standard. As shown below, Plaintiffs' claims are, at least, plausible on the Complaint's face. There can be no doubt that the Plaintiffs' allegations established more than a "sheer possibility" that Defendants acted unlawfully, and sufficiently gave Defendants fair notice of Plaintiffs' claims and the grounds upon which they rest.[14] In order

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).
[9] *Id*.
[10] *Id*.
[11] *Boulaware v. Baldwin*, 545 F.App'x 725, 729 (10th Cir. 2013) (citation omitted); Fed. R. Civ. P. 8(a)(3).
[12] Fed. R. Civ. P. 8(d)(2).
[13] Fed. R. Civ. P. 18.
[14] *Iqbal*, 556 U.S. at 678, *see also Warnick*, 895 F.3d at 751.

to determine the appropriate relief, Plaintiffs must be allowed to engage in discovery as is necessary for MHPAEA claims.[15] This Court should reject Defendants' motions.

## **ARGUMENT**

### I.   **PLAINTIFFS SUFFICIENTLY PLEADED THEIR MHPAEA CLAIM**

Congress enacted MHPAEA "to end discrimination in the provision of insurance coverage for mental health and substance abuse disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[16] Among other provisions, MHPAEA requires that an ERISA benefits plan "providing for 'both medical and surgical benefits and mental health or substance use disorder benefits' must not impose more coverage restrictions on the latter than it imposes on the former."[17] This parity requirement takes two forms: (1) plan administrators may not apply treatment limitations to mental health benefits that are more restrictive than "the predominant treatment limitations applied to substantially all medical and surgical benefits" and (2) plan administrators may not apply "separate treatment limitations" only to mental health benefits.[18] "In effect, the Parity Act prevents insurance

---

[15] *See Johnathan Z. v. Oxford Health Plans*, No. 2:18-cv-383-JNP-PMW, 2020 U.S. Dist. LEXIS 21968, at *59 (D. Utah Feb. 7, 2020) ("Parity Act claims 'generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions[.]'") (internal citations omitted); *see Bushell v. Unitedhealth Grp. Inc.*, No. 17-CV-2021 (JPO), 2018 U.S. Dist. LEXIS 51577, at *19 (S.D.N.Y. Mar. 27, 2018); *see also Nathan W. v. Anthem BlueCross BlueShield of Wis.*, No. 2:20-cv-00122-JNP-JCB, 2021 U.S. Dist. LEXIS 42127, at *26 (D. Utah Mar. 5, 2021).

[16] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

[17] *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1219 (D. Utah 2019) (quoting 29 U.S.C. §1185a(a)(3)(A)).

[18] 29 U.S.C. §1185a(a)(3)(A)(ii).

providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently."[19]

Regulations implementing MHPAEA thus prohibit unequal "treatment limitations."[20] Treatment limitations may be found on the face of the Plan's terms or in how the Plan is applied in practice. Treatment limitations include "both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits under a plan or coverage."[21] Nonquantitative treatment limitations on mental health benefits include "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness," and "restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage."[22] In addition, the implementing regulations provide that all "processes, strategies, evidentiary standards, or other factors used in applying" nonquantitative treatment limitations are subject to MHPAEA's parity requirements.[23]

---

[19] *David S. v. United Healthcare Ins. Co.*, 2019 U.S. Dist. LEXIS 157046, at *3, WL 4393341 (D. Utah 2019) (citing *Munnelly v. Fordham Univ. Faculty*, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018) ("Essentially, the Parity Act requires ERISA plans to treat sicknesses of the mind in the same way that they would a broken bone.")).

[20] *See* 29 C.F.R. §2590.712(a); 29 U.S.C. §1185a(a)(3)(B)(iii) (defining "treatment limitations").

[21] 29 C.F.R. §2590.712(a).

[22] *Id*. §2590.712(c)(4)(ii)(A)-(H).

[23] *Id*. §2590.712(c)(4)(i).

There are, consequently, many ways a Plan or insurer can violate MHPAEA, and many ways that a Plaintiff can make out a claim for a MHPAEA violation.[24] As a result, "there is no clear law on what is required to state a claim for a Parity Act violation."[25]

The Tenth Circuit "has not promulgated a test to determine what is required to state a claim for a Parity Act violation, and district courts have presented varying analyses."[26] At least one court has identified the elements of an as-applied challenge as: (1) the relevant group health plan is subject to MHPAEA; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the defendant applied a treatment limitation more restrictively to limit mental health/substance use disorder benefits; and (4) the mental health or substance use disorder benefits being limited is in the same classification as the medical/surgical benefit to which it is being compared.[27] No matter what test is used, Plaintiff has presented a plausible MHPAEA claim here.

Plaintiffs' Complaint alleges that Cigna discriminates against mental health claimants in three ways by categorically excluding all State of Utah licensed outdoor youth programs ("OYP" or "OYPs")[28] from coverage when it does not exclude analogous medical/surgical treatment.

---

[24] *See, e.g., Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1235-1236 (D. Utah 2019) (explaining that "Plaintiffs may allege that the Plan contains an exclusion that is discriminatory on its face; the Plan contains an exclusion that is discriminatorily applied between mental health treatment and its clear medical/surgical analogue; and/or that the Plan's exclusion is the result of an improper process that violates the Parity Act").

[25] *Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019).

[26] *Johnathan Z. v. Oxford Health Plans*, 2020 U.S. Dist. LEXIS 21968, at *38-39, 2020 WL 607896 (D. Utah 2020).

[27] *Michael D.*, 369 F. Supp. 3d at 1174.

[28] In the denial correspondence from Defendants, Cigna refers to OYPs at times as "Wilderness Therapy." OYP are also sometimes referred to as "Outdoor Behavioral Healthcare." See, e.g., https://obhcouncil.org. Plaintiffs refer to these programs as OYPs because that is how these types of programs are licensed and regulated in Utah. See Utah Admin. Code R501-8. The substance of the treatment provided at these programs, sub-acute therapeutic treatment of mental health and substance use disorders in an outdoor setting, is the same.

First, Plaintiffs aver that the language of the Plans does not support the conclusion that outdoor youth programs are experimental, investigational, or unproven.[29] Plaintiffs further allege that the fact that outdoor youth programs are licensed by the State of Utah as mental health services providers, bill under a unique revenue code issued by the National Uniform Billing Committee, and have been demonstrated to be effective by extensive peer-reviewed, evidence-based literature studies demonstrates that they are not experimental, investigational, or unproven.[30] Accordingly, Plaintiffs argue that Cigna has used its CAM policy as a pretext to deny a type of mental health or substance use disorder care – outdoor youth programs – that does not actually meet the Plan's definition of experimental, investigational, or unproven care.[31] Plaintiffs assert that Cigna does not exclude analogous medical/surgical programs (i.e. skilled nursing facility or similar sub-acute inpatient care) as experimental, investigational, or unproven if those programs do not actually meet that definition.[32] This is a disparity that violates MHPAEA.

Second, Plaintiffs allege that Cigna's categorical denial for State of Utah licensed OYP treatment is not mirrored with an analogous denial for outdoor medical/surgical treatment in a sub-acute inpatient context.[33] Put another way, Plaintiffs assert that Cigna denies Utah OYPs but does not deny analogous medical/surgical programs.[34] This is also a disparity that violates MHPAEA.

Third, Plaintiffs allege that Cigna denies Utah licensed OYP claims but carves out an exception for services "rendered by an independently licensed health care professional" to be

---

[29] *See* ECF No. 25 ("Complaint"), ¶124, 139-144.
[30] *See id.* ¶124, 143.
[31] *See generally id.*
[32] *See id.* ¶138, 140, 142-144.
[33] *See id.* ¶¶142-144.
[34] *See id.*

covered.[35] Plaintiffs aver that Cigna does not deny coverage but for those services "rendered by an independently licensed health care professional" for analogous medical/surgical claims.[36] This also articulates a violation of MHPAEA.

Taken as true, these factual allegations are more than sufficient to satisfy either test for stating a MHPAEA claim.[37] Each of the discriminatory practices that Plaintiffs outline in their Complaint are sufficient to state a claim, and when read together, they make a compelling case for Cigna's potential MHPAEA violations. They allow the Court to draw reasonable inferences that Cigna is liable for violating MHPAEA, and they give "fair notice" to Cigna of what the "claim is and the grounds upon which it rests."[38] Indeed, "a complaint in federal court pleads claims, not facts."[39] Plaintiffs are thus "not required to provide additional or more specific factual allegations concerning the analogous services or the specific process by which [Cigna] allegedly disparately applies the" treatment limitations.[40]

## II.   DEFENDANTS' ARGUMENTS FOR DISMISSAL OF PLAINTIFFS' MHPAEA CLAIM ARE WITHOUT MERIT

Defendants urge this Court to dismiss Plaintiffs' MHPAEA claim for three reasons. First, they contend that Plaintiffs did not sufficiently allege facts supporting an as-applied challenge via medical/surgical analogues where the experimental, investigative, and unproven exclusion doesn't apply.[41] Second, they contend that any challenge has no basis due to the CAM Policy's purported exclusion of wilderness therapy for medical, surgical, and mental health care.[42] Third,

---

[35] *See id*. ¶50, 60-61, 80, 100.
[36] *See id*.
[37] *See James C.*, 2021 U.S. Dist. LEXIS 115701, at *52; *Michael D.*, 369 F. Supp. 3d at 1174.
[38] *Warnick*, 895 F.3d at 751.
[39] *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).
[40] *Smith v. Golden Rule Ins. Co.*, 526 F. Supp. 3d 374, 389 (S.D. Ind. 2021); *see also Warnick*, 895 F.3d at 751.
[41] ECF Doc. No. 30, at 12-13 of 19.
[42] *Id*.

they assert that Plaintiffs' MHPAEA claim is duplicative of their ERISA claim for benefits.[43] As shown below, Defendants are incorrect.

###### A. Plaintiffs Sufficiently Allege Facts Supporting an As-Applied Challenge, and Discovery Would be Fruitful in Developing This Claim.

Plaintiffs sufficiently allege facts supporting an as-applied challenge under MHPAEA. Although the Plans give the reviewer the ability to rely on the CAM Policy, the text of the CAM Policy's exclusion for outdoor youth programs as experimental, investigative, or unproven is tellingly focused ***only*** on mental health and substance use disorders rather than medical/surgical care. The OYP section of the CAM Policy states that most of these programs are "designed to fit the needs of a specific target group (e.g., substance abuse, school truancy, failing school) and work with teens or at-risk teens," also identifying that the proposed benefits of these programs are "direct positive impacts on well-being and [] stress… foster[ing] the psychological concepts related to resilience, self-efficacy, mindfulness and subjective well-being."[44]

The CAM Policy's definitions seem narrowly tailored to apply only to programs that might treat mental health or substance use disorders. Blanket exclusions of wilderness treatment have been found to constitute MHPAEA violations very similar to what Plaintiffs assert here.[45] Often, exclusions like the ones Cigna cited in its denials "have only been applied to outdoor behavioral and mental health treatment programs, and thus the effect of [such] limitation[s] is [to

---

[43] ECF Doc. No. 39, at 3 of 5.

[44] ECF Doc. No. 14-4, at 25 of 55.

[45] *See Johnathan Z. v. Oxford Health Plans*, 2022 U.S. Dist. LEXIS 121033, *57-58 (D. Utah 2022) (faulting an ERISA administrator for denying claims for mental health treatment in outdoor settings when there was no evidence it would deny claims for analogous medical/surgical care in outdoor settings); *also Joseph F. v. Sinclair Services Co.*, 158 F. Supp. 3d 1239 (D. Utah 2016) (holding that blanket exclusions for one type of care offered only for mental health or substance use disorder treatment violate MHPAEA); *also Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1174-75 (D. Utah 2019).

impose] a limit on mental health treatment that does not apply to medical or surgical treatment."[46]

Additionally, the studies that met the CAM Policy's standards for inclusion overwhelmingly supported the beneficial nature of OYPs, with eleven reporting entirely positive results, one reporting mixed results, and only one reporting negative results.[47]

The CAM Policy seems to point to OYPs as experimental in a conclusory manner, ignoring a wealth of evidence that proves they are both safe and effective. Cigna misapplies the definition of "experimental" and "investigative" in the Plans, requiring studies show that OYPs are **more** effective than traditional treatment, rather than "safe and effective for treating or diagnosing the condition or sickness for which [] use is proposed."[48] Plaintiffs provided extensive information about the efficacy of OYPs, as well as arguing that the experimental/investigational exclusion of the Plans was inapplicable.[49] Defendants never addressed these arguments as they are required to under ERISA.[50]

---

[46] *Michael D.*, 369 F. Supp. 3d 1175.

[47] ECF Doc. No. 14-4, at 25 of 55.

[48] *See* Complaint, ¶57; ECF Doc. No. 30-2, at 49 of 79; ECF Doc. No. 30-3, at 56 of 91; *see generally Greenwell v. Grp. Health Plan for Emps. Of Sensus USA Inc.*, No. 5:19-CV-577-FL, 2023 U.S. Dist. LEXIS 94996, at *22-30 (E.D.N.C. Mar. 27, 2023) (Where a Court applied substantially similar Plan language defining investigational care, finding an administrator's as-applied requirement that care be *more* effective or beneficial, rather than *as* effective or beneficial as established alternatives, inappropriate).

[49] *See* Complaint, ¶¶53-58, 86, 88-99.

[50] *See* Complaint, ¶65, 102-03; *see also D.K. v. United Behavioral Health*, 67 F.4th 1224, 1239-41 (10th Cir. 2023) (outlining the responsibility of administrators to engage in meaningful dialogue with plan participants and beneficiaries under 29 U.S.C. §1133(2)); *also K.D. v. Anthem Blue Cross & Blue Shield*, No. 2:21-cv-343-DAK-CMR, 2023 U.S. Dist. LEXIS 167836, at *20-21 (D. Utah Sep. 20, 2023) (elaborating on meaningful dialogue and finding that an administrator's conclusory assertions, unsupported by arguments addressing Plaintiffs' rationale for coverage, are not enough).

It follows that Plaintiffs should be entitled to discovery in this case, including requests for admissions, interrogatories, and requests for production, as well as expert discovery.[51] Cigna cannot use rule 12(b)(6) to unilaterally determine what evidence Plaintiffs may or may not receive or present to the Court. Once discovery has concluded, the parties can present their claims to the Court at the proper time: the summary judgment stage.

Plaintiffs' allegations are sufficient. Cigna does not categorically exclude coverage for medical treatment provided in an outdoor setting but does categorically exclude coverage for Utah OYPs. Exclusions based on experimental treatment, geographic location, facility type, or provider specialty that do not exist for analogous medical/surgical benefits are impermissible under MHPAEA.[52] Cigna does not apply this limitation to analogous sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities, and relies on a narrow, mental-health-focused definition of OYPs to absolve itself of responsibility for a Parity Act violation.[53]

Cigna incorrectly references the CAM Policy as a binding document, implying that it somehow governs the Plan.[54] While the Plan states that the reviewer "may rely" on Cigna's clinical coverage policies, they should not be allowed to do so when those policies contradict the terms of the Plan. The CAM Policy itself identifies that when there is a conflict with Plan

---

[51] *See, e.g.*, *Johnathan Z.*, 2020 U.S. Dist. LEXIS 21968, at *59 ("Parity Act claims 'generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions.'"); *Melissa P.*, 2018 U.S. Dist. LEXIS 216775, at *4 (observing that "[d]iscovery will allow [plaintiff] to learn and compare the processes, strategies, evidentiary standards, and other factors [the claims administrator] used for sub-acute care in both" mental and medical healthcare coverage contexts); *Michael W. v. United Behavioral Health*, 420 F. Supp. 1207, 1233, 1235 (D. Utah 2019) (same).

[52] 29 U.S.C. §1185a(a)(3)(A)(ii); 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

[53] Complaint, §59, 99, 137-39.

[54] ECF Doc. No. 30, at 12-13 of 19.

language, the "plan document always supersedes the information in the Coverage Policies."[55] As Plaintiffs allege, the Plans provide coverage for "Other Health Care Facilit[ies]," which includes but is not limited to "licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities."[56] As such, a determination by a reviewer in accordance with the CAM Policy must consider that the Plans provide for coverage of OYPs in their terms. Additionally, while the reviewer is entitled to rely on the CAM Policy in evaluating claims, that same document states its terms must be superseded by the applicable Plan when in conflict with it.

The services provided at Utah OYPs meet the requirements of "Other Health Care Facilit[ies]" as alleged in the Complaint. By Cigna's own admission in the denial letters to Plaintiffs, they applied additional disparate criteria from the CAM Policy – criteria expressly forbidden from superseding the language of the Plan – to deny treatment. Accordingly, Defendants' motion fails.

### B. Plaintiffs' MHPAEA Cause of Action Is Not Duplicative of Their ERISA Claim for Benefits.

ERISA and MHPAEA address different injuries and protect different interests. ERISA protects contractual benefits and imposes disclosures, fiduciary duties, and standards for operating certain employee benefit plans.[57] MHPAEA is very different. Congress enacted MHPAEA to "end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[58]

---

[55] ECF Doc. No. 14-4, at 2 of 55.
[56] ECF Doc. No. 30-2, at 75 of 79; ECF Doc. No. 30-3, at 87 of 91.
[57] *See U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-102 (2013) (generally describing ERISA's impact on contract law); 29 U.S.C. §§1022, 1024, and 1104 (setting forth various key provisions of ERISA).
[58] *Am. Psychiatric Ass'n. v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

In contrast to the relief sought under Plaintiffs' (a)(1)(B) and declaratory relief claims, the equitable relief Plaintiffs seek in their MHPAEA cause of action is directed at addressing violations of the Parity Act to ensure individuals will have access to coverage for mental health and substance use disorder treatment in the way Congress intended when it originally passed MHPAEA in 2008 and amended that statute as recently as 2020.[59]

Two Supreme Court cases serve as the guiding precedent for duplicative claims under ERISA: *Varity Corp. v. Howe* and *CIGNA Corp. v. Amara*. *Varity* suggests that the main concern in limiting remedies to either a 29 U.S.C. §1132(a)(1)(B) claim or a 29 U.S.C. §1132(a)(3) claim is to avoid lawyers "complicat[ing] ordinary benefit claims by dressing them up in 'fiduciary duty' clothing" to pursue the same "repackage[d]" claim under both provisions.[60] The Court's primary concern in allowing repackaged claims was that a plaintiff could use this to avoid the "arbitrary and capricious" standard of review applied to 29 U.S.C. §1132(a)(1)(B) under *Firestone Tire*, instead availing themselves of the "rigid level of conduct" expected of fiduciaries.[61] The ruling in *Varity* was narrow, and the Court stated "that where Congress elsewhere provided *adequate relief* for a beneficiary's injury, there will *likely* be no need for further equitable relief, in which case such relief *normally* would not be 'appropriate.'"[62] Here, not only can 29 U.S.C. §1132 fail to provide "adequate relief," outside of (a)(3), Plaintiffs do not seek to avoid the arbitrary and capricious standard of review by pursuing a claim for breach of fiduciary duty. Instead, Plaintiffs pursue a claim under 29 U.S.C. §1132(a)(3) to remedy a

---

[59] 116 P.L. 260, Division BB, Title II, Sec. 203. STRENGTHENING PARITY IN MENTAL HEALTH AND SUBSTANCE USE DISORDER BENEFITS; 29 U.S.C. §1185a(6),(7), and (8).

[60] *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996).

[61] *Id.* at 513-514.

[62] *Id.* at 515 (internal citations and quotations omitted) (emphasis added); *Christine S.*, 428 F. Supp. 3d at 1221 (D. Utah 2019).

violation of the Parity Act, which does not pose the same threat to deferential review of plan administrator decisions regarding plan benefits. Indeed, the equitable relief afforded by Plaintiffs' MHPAEA claim is aimed at a distinct statutory violation and protecting different Congressional policies from that afforded by a claim for benefits under ERISA in 29 U.S.C. §1132(a)(1)(B).

The second case of import, *CIGNA Corp. v. Amara*, further supports this reasoning, indicating that the language of 29 U.S.C. §1132(a)(1)(B) "speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them."[63] In *Amara*, the Court reversed a ruling in favor of Plaintiffs on an (a)(1)(B) claim and remanded the case for consideration of a claim under (a)(3), stating that the plaintiffs could seek equitable relief in the form of plan reformation, estoppel, or surcharge.[64] Functionally, *Amara* permitted the plaintiffs to pursue claims under both (a)(1)(B) and (a)(3), and after considering the merits of the plaintiffs' (a)(1)(B) claim, permitted the lower court to examine whether equitable relief under (a)(3) was appropriate.[65]

What *Varity* and *Amara* construct is a "general *remedy* preference for awarding monetary relief under [29 U.S.C. §1132](a)(1)(B) rather than equitable relief under [29 U.S.C. §1132](a)(3)."[66] These cases "do not establish a categorical rule prohibiting [p]laintiffs from pleading two different *causes of action* under [29 U.S.C. §1132](a)(1)(B) and [29 U.S.C. §1132](a)(3)… [m]oreover, in both *Varity* and *Amara*, the courts were able to determine the

---

[63] 563 U.S. 421, 436 (2011).
[64] *Amara*, 563 U.S. at 438-445.
[65] *Christine S.*, 428 F. Supp. 3d at 1222 (citing *Amara*).
[66] *Id* at 1222.

adequacy of potential ERISA remedies only after a trial in the district court[,]" and assessment of which remedy is adequate should properly occur later in litigation.[67]

Calling the MHPAEA cause of action "duplicative" of Plaintiffs' claim for benefits ignores well-settled law in this district and the spirit of both MHPAEA itself and Supreme Court precedent on ERISA claims.[68] Denying a claim asserted under 29 U.S.C. §1132(a)(3) like the MHPAEA cause of action here is appropriate only if the alleged injury to the plaintiff may be completely remedied by a claim under 29 U.S.C. §1132(a)(1)(B), a determination not possible at the motion to dismiss stage.[69] There is no rule "prohibiting [p]laintiffs from pleading two different *causes of action* under [29 U.S.C. §1132](a)(1)(B) and [29 U.S.C. §1132](a)(3)… [m]oreover, in both *Varity* and *Amara*, the courts were able to determine the adequacy of potential ERISA remedies only after a trial in the district court."[70]

Allowing equitable relief via reformation of the plan terms under the MHPAEA cause of action will explicitly fulfill the purpose of that statute: preventing an ERISA plan from inappropriately discriminating against mental health/substance use disorder treatment benefits

---

[67] *Id.*; *see also George v. CNH Health & Welfare Ben. Plan*, No. 16-CV-1678-JPS, 2017 U.S. Dist. LEXIS 77437, at *12 (E.D. Wis. May 22, 2017) ("If more than one theory is ultimately successful… the Court must *then* carefully consider whether the available remedies are inappropriately duplicative.") (emphasis added); *see also N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125, 134 (2d Cir. 2015).

[68] *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *also CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011); *also Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1221; *Denise M.*, 2020 U.S. Dist. LEXIS 176154, at *18-20; *Brianna S. v. UnitedHealthcare*, No. 2:18-cv-00672-DBB, 2021 U.S. Dist. LEXIS 19997, at *23-24 (D. Utah Jan. 29. 2021); *Theo M. v. Beacon Health Options*, No. 2:19-cv-364-JNP, 2020 U.S. Dist. LEXIS 166903, at *19-20 (D. Utah Sep. 11, 2020).

[69] *Christine S.*, 428 F. Supp. 3d at 1220 (D. Utah 2019).

[70] *Id* at 1222.

owed to Plaintiffs.[71] As discussed previously, this is not a repackaging of Plaintiffs' claim for benefits. Instead, it is a distinct injury with a distinct remedy, without which Plaintiff may not have their claim evaluated fairly.[72] Plans are precluded from deciding if coverage applies when an alleged MHPAEA violation could affect the decision to award benefits, as is the case here.[73] And regardless of how aligned the decision to deny benefits was with the terms of the Plan, if the decision violates MHPAEA, the denial cannot stand.[74]

It may be the case that in addressing Plaintiffs' Parity Act claim on the merits, after discovery has been conducted, that the Court finds the benefits decision was made based on criteria that violate MHPAEA. However, the Court could also find that while Plaintiffs succeed in their Parity Act claim, forcing Defendants to reform the Plan language to comply with the statute, Plaintiffs still may fail to show entitlement to benefits. The relief sought under the first cause of action may not be possible without the relief afforded by the second, but it remains true that relief could be granted on the second cause of action but denied on the first. It follows that Plaintiffs' 29 U.S.C. §1132(a)(1)(B) and Parity Act claims are not duplicative and afford the Plaintiffs distinct remedies.

At minimum, at the motion to dismiss stage the Court lacks substantial evidence to evaluate these potential remedies and it would be premature to determine whether Plaintiffs' (a)(1)(B) claim would provide adequate relief.[75] At the pleading stage "it is difficult to determine

---

[71] *See* 29 U.S.C. §1132; *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016) (Congress enacted MHPAEA "to end discrimination in the provision of insurance coverage for mental health and substance abuse disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans.").

[72] *See Denise M. v. Cigna Health & Life Ins. Co.*, No. 2:19-cv-764-JNP, 2020 WL 5732321, at *13 (D. Utah Sep. 23, 2020).

[73] *Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155, 1158 (9th Cir. 2018).

[74] *Id.*

[75] *Denise M.* at *18-20.

if relief is indeed owed under 29 U.S.C. §1132(a)(1)(B), and requiring the plaintiff to pursue that path may foreclose the plaintiff from bringing a better case pursuant to 29 U.S.C. §1132(a)(3)."[76] Until the merits of Plaintiffs' claims are determined, this Court will not know the scope of the equitable relief to which Plaintiffs are entitled. Defendants' objections are consequently premature because the Court cannot determine the equitable relief established by statute prior to briefing on the merits.

### III.   PLAINTIFFS SUFFICIENTLY PLEADED THEIR ERISA CLAIM FOR BENEFITS

Plaintiffs contend that Cigna should have covered the outdoor youth program treatment at issue in the case because it qualifies for coverage under the terms of the Plans.[77] The Plans provide that treatment at "Other Health Care Facilit[ies]" is covered, including treatment at "subacute facilities."[78] The Plans then provide exclusions for experimental, investigational, or unproven treatments only as they apply to treatments that are:

- not approved by the U.S. Food and Drug Administration (FDA) or other appropriate regulatory agency to be lawfully marketed;

- not demonstrated, through existing peer-reviewed evidence-based, scientific literature to be safe and effective for treating or diagnosing the condition or Sickness for which its use is proposed;

- the subject of review or approval by an Institutional Review Board for the proposed use except as provided in the "Clinical Trials" sections of this plan; or

---

[76] *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014).

[77] Of course, Plaintiffs also argue that Cigna's application of the CAM to exclude all treatment at outdoor youth programs violates MHPAEA. Should Plaintiffs prevail on that portion of their MHPAEA cause of action, one of the remedies the Court could award would be a remand for Plaintiffs' claims to be evaluated without using the CAM Policy. This possibility militates against dismissing Plaintiffs' first cause of action until the Court has evaluated the merits of Plaintiffs' second cause of action.

[78] ECF Doc. No. 14-2, at 75; ECF Doc. No. 30-3, at 87.

- the subject of an ongoing phase I, II or III clinical trial, except for routine patient care costs related to qualified clinical trials as provided in the "Clinical Trials" sections of this plan."[79]

Here, the CAM Policy finds that outdoor youth programs are safe and effective for treating or diagnosing the condition or sickness for which their use is proposed. Indeed, 11 out of the 13 studies cited by the CAM Policy concluded that outdoor youth programs are safe and effective for treating mental health and substance use disorders in youth.[80] Plaintiffs also submitted several hundred pages of studies to Cigna demonstrating the same point. Defendants are precluded in litigation from trying to elaborate on any bare-bones prelitigation appeal rationale, and per the Tenth Circuit's decision in *D.K. v. United Behavioral Health*, the Court must limit its consideration of whether Defendants' denials were sufficient to the text of the denial letters themselves.[81] As Plaintiffs alleged in the Complaint, they submitted extensive appeals outlining the reasons that treatment at OYPs was not "experimental, investigational, or unproven" care and Defendants chose not to respond to this information with anything more than conclusory assertions that care at OYPs was, nonetheless, "experimental, investigational, or unproven."[82] This is hardly the meaningful dialogue contemplated by ERISA.[83]

---

[79] *See* ECF Doc. No. 14-2, at 49; ECF No. 30-3, at 56.
[80] *See* ECF Doc. No. 14-4, at 25.
[81] 67 F.4th 1224, 1239 (10th Cir. 2023).
[82] Complaint, ¶50, 55, 58, 65, 80, 89-98, 102.
[83] 29 U.S.C. §1133(2); *See also Theo M. v. Beacon Health Options*, 2022 U.S. Dist. LEXIS 177120, *42-51 (D. Utah 2022) (stating it is not enough for defendant claims administrators to simply acknowledge arguments presented by Plaintiffs; instead they must engage with the arguments by providing some "explanation for their disagreement" with professional opinions offered in appeals); *also K.D. v. Anthem Blue Cross & Blue Shield*, No. 2:21-cv-343-DAK-CMR, 2023 U.S. Dist. LEXIS 167836, at *21 (D. Utah Sep. 20, 2023) (finding a lack of meaningful dialogue or engagement where "[Claims Administrator] took the detailed information Plaintiffs submitted regarding [their] condition and needs and boiled it down to 'your doctor wanted you to stay longer.' This does not address the reasons why the doctor wanted her to stay longer.").

Accordingly, Plaintiffs have made a plausible claim that Cigna should have awarded benefits to them under the terms of the Plans. Whether the CAM Policy violated MHPAEA or not, neither the CAM Policy nor the terms of the Plans support Cigna's refusal to cover outdoor behavioral healthcare on the basis that it is experimental, investigational, or unproven.

Additionally, deciding to dismiss Plaintiffs' ERISA claim for benefits necessarily implicates an analysis of the merits of their MHPAEA cause of action. The question of whether the (a)(1)(B) claim is meritorious is not solely whether Plaintiffs have pled to meet the standards of the Plans. The question also involves an inquiry into whether the Plans' standards themselves violate MHPAEA. When the allegations of the Complaint are assumed to be true, the provisions in the Plans relating to the benefits to which the Plaintiffs are entitled cannot be enforced to exclude coverage for OYPs without violating MHPAEA. In short, if the Court determines MHPAEA has been violated, a claim for benefits that otherwise fails based on a Plan exclusion may become meritorious.[84] Dismissing the ERISA claims now is against the interests of judicial efficiency, as if Plaintiffs prevail on their MHPAEA cause of action, they will ask for reformation of the terms of the Plans and again for reconsideration of their benefits denials under (a)(1)(B), this time governed by terms that do not violate the Parity Act.

## IV. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS NOT DUPLICATIVE

The Declaratory Judgment Act allows federal courts to "declare the rights and other legal relations of any interested party … whether or not further relief is or could be sought" when confronted with most "case[s] of actual controversy within [their] jurisdiction."[85] However, courts may also decline to hear declaratory judgment actions based on several factors, including:

---

[84] *Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155, 1158 (9th Cir. 2018).
[85] 28 U.S.C. § 2201(a).

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3]. whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[86]

To put a finer point on it, if a court finds that a claim under the Declaratory Judgment Act merely restates "an issue already before the court[,]" it may refuse to hear the declaratory judgment action in favor of focusing on the claim that more clearly articulates the requested relief.[87] Here, Plaintiffs' second cause of action requests a declaration that Defendants "are not permitted to categorically deny claim for treatment received at OYPs."[88] In their motion to dismiss this cause of action, Defendants argue that this request for a declaration "reraises all the same issues as Plaintiffs' ERISA claims" and argue that the Court should refuse to hear (and subsequently dismiss) this cause of action.

Defendants misapprehend Plaintiffs' request. Plaintiffs' first cause of action for recovery of wrongfully denied benefits asks the Court to hold that the terms of the Plan cover treatment received at OYPs. Plaintiffs' second cause of action for violation of MHPAEA asks the Court to hold that Defendants' refusal to cover Utah licensed OYP treatment violates MHPAEA. By contrast, Plaintiffs' declaratory judgment action asks the Court to find that Defendants may not exclude coverage for Utah OYPs, without a finding that the Plan provides coverage or that Defendants' exclusion violates MHPAEA. This is a distinctive remedy not contemplated by

---

[86] *State Farm File & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (citation and internal quotation marks omitted).
[87] *Onset Fin. Inc. v. Victor Valley Hosp. Acquisition, Inc.*, 2018 U.S. Dist. LEXIS 58494, *10 (D. Utah 2018).
[88] Complaint, ¶149.

Plaintiffs' other two causes of action. Accordingly, the Court should not dismiss Plaintiffs' third cause of action.

## V.        PLAINTIFFS EXHAUSTED THEIR ADMINISTRATIVE REMEDIES

Defendants argue that Plaintiffs have not exhausted their administrative remedies before suing.[89] What Cigna does not acknowledge is that the Plaintiffs properly alleged they completed the appeals processes, and that charging Plaintiffs with completing extra levels of appeal beyond the two required by 29 C.F.R. §2560.503-1(c)(2) violated ERISA's claims procedure regulations.

Additionally, where a plan offers voluntary levels of appeal like the IRO under the Slalom Plan ("you *may* request that your appeal be referred to an [IRO]")[90] or the IMR under the Tides Plan,[91] the claims procedures provide that "[t]he plan waives any right to assert that a claimant has failed to exhaust administrative remedies because the claimant did not elect to submit a benefit dispute to any such voluntary level of appeal provided by the plan[.]"[92] Accordingly, this cannot be grounds for dismissal of Plaintiffs' claims, and Defendants' motion fails.

## VI.       THIS COURT HAS SUBJECT MATTER JURISDICTION

Defendants also move for dismissal pursuant to Rule 12(b)(1) citing a lack of subject matter jurisdiction. They point to the fact that Cigna ceased being the administrator of the Slalom Plan on December 30, 2020, as their basis for this argument. However, Plaintiffs' claim originated on May 1, 2020, before Cigna stopped being the Plan Administrator. Defendants also assert that the respective named Plaintiffs do not have standing under each other's Plans – namely, that J.S. and R.R. do not have standing against the Slalom Plan as members of the Tides

---

[89] ECF Doc. No. 30, at 2 of 19.
[90] ECF Doc. No. 30-2, at 63 of 79 (emphasis added).
[91] *See* ECF No. 30-3, at 78-79 (containing no language indicating that the IMR is mandatory).
[92] 29 C.F.R. §2560.503-1(c)(3)(i).

Plan, and that S.F. and E.F. do not have standing against the Tides Plan as members of the Slalom Plan.[93] Defendants cannot dispute however, that J.S. and R.R. have standing against Tides Plan. Similarly, S.F. and E.F. have standing against Slalom Plan. Defendants do not argue that Plaintiffs do not constitute proper class representatives under Fed. R. Civ. P. 23. All parties are proper and all have Article III standing.

Plaintiffs bring suit under ERISA, which establishes the Defendants have a fiduciary duty to participants and beneficiaries.[94] In order to have an actionable claim for a breach of fiduciary duty, there must be (1) a fiduciary relationship, (2) a duty arising out of the fiduciary relationship, (3) a breach of the duty, and (4) damages proximately caused by the breach of duty.[95] The mere fact that Cigna is no longer the claims administrator for the Slalom Plan does not mean it had no liability if it breached ERISA fiduciary duty obligations when it administered the Plan. Defendants do not, and cannot, point to any authority in this district or this Circuit that absolves them of responsibility for past violations of ERISA's fiduciary duty requirements simply because they are not acting as fiduciaries at the time litigation is occurring. Defendants point to a string of cases that allowed dismissal of claims administrators only when the claims administrators had "no control or discretion concerning benefits under the [plans]."[96] But those cases are not this case. The Complaint clearly alleges Cigna is an ERISA fiduciary.[97]

---

[93] ECF Doc. No. 39, at 2 of 5; ECF Doc. No. 49, at 3 of 5.
[94] 29 U.S.C. §1104.
[95] *CoBank, ACB v. Reorganized Farmers Coop. Ass'n*, 334 F. Supp. 2d 1273, 1277 (D. Kan. 2004).
[96] *Kendall v. Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers Loc. 793 Pension plan*, 2011 U.S. Dist. LEXIS 39362, at *13 (D. Minn. Apr. 11, 2011).
[97] Complaint ¶3, 11, 14.

Additionally, whether a claim involves an ERISA "plan" is a non-jurisdictional defect that can only give rise to arguments that a plaintiff failed to state a claim for relief.[98] Dismissal for lack of statutory standing under ERISA is a question on the merits of the case, rather than one of subject matter jurisdiction.[99] Even if this were not the case, the burden for dismissing a claim alleged to arise under federal law for lack of subject matter jurisdiction is a high one, allowing dismissal "only if: (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction'; or (2) 'such a claim is wholly insubstantial and frivolous.'"[100]

Defendants cannot establish either of these requirements for dismissal. Even if they were able to do so, as dismissal of this type of claim is properly contemplated under the Rule 12(b)(6) standard rather than under Rule 12(b)(1), requiring the Court to rule on the merits of Plaintiffs' claims and dismiss for lack of subject matter jurisdiction is inappropriate at this stage. Indeed, motions to dismiss do not resolve contests surrounding facts or merits of a claim.[101] The facts surrounding the applicability of the OYP exclusion are disputed, and the Court cannot determine the merits of that contest at this stage.[102] Plaintiffs sufficiently pleaded their claims. The Court should deny Defendants' motions to dismiss and allow the case to move to discovery and briefing.

//

---

[98] *Sanzone v. Mercy Health*, 954 F.3d 1031 (8th Cir. 2020)

[99] *Vaughn v. Bay Envtl. Mgmt.*, 567 F.3d 1021, 1024 (9th Cir. 2009); *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221-22 (11th Cir. 2008); *Harzewski v. Guidant Corp.*, 489 F.3d 799, 803-04 (7th Cir. 2007).

[100] *Bell v. Hood*, 327 U.S. 678 at 682-83, 66 S. Ct. 773, 90 L. Ed. 939 (1946).

[101] *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *Feldman v. law Enforcement Assocs. Corp.*, 779 F. Supp. 2d 472, 487 (E.D.N.C. 2011); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[102] *See Iqbal*, 556 U.S. at 678; *See also Warnick*, 895 F.3d at 751.

**CONCLUSION**

For all the foregoing reasons, the Court should deny Defendants' Motions to Dismiss the

Plaintiffs' Complaint.

DATED this 30th day of October, 2023

/s/ Brian S. King
Brian S. King
Andrew J. Somers
Attorneys for Plaintiffs


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document, has been served

to all parties registered to receive notices for the above captioned matter through the Court's

CM/ECF system.

DATED this 30th day of October, 2023


/s/ Brian S. King