IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| S.F., E.F., J.S. and R.R., on behalf of themselves and other similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>**CIGNA HEALTH and LIFE INSURANCE COMPANY, CIGNA BEHAVIORAL HEALTH, SLALOM INC. HEALTHCARE BENEFIT PLAN, and THE TIDES FOUNDATION HEALTH & WELFARE PLAN,**<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:23-CV-213-DAK-JCB<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

This matter is before the court on Defendants Cigna Health and Life Insurance Company and Cigna Behavioral Health, Inc.'s (collectively "Cigna") Motion to Dismiss the First Amended Complaint [ECF No. 30], Defendant Slalom LLC Healthcare Benefit Plan's Motion to Dismiss First Amended Complaint [ECF No. 39], and Defendant The Tides Foundation Health & Welfare Plan's Motion to Dismiss the First Amended Complaint [ECF No. 49]. On January 31, 2024, the court held a hearing on the motion. At the hearing, Plaintiffs were represented by Brian S. King, Sean K. Collins, Samuel Martin Hall, and Mala M. Rafik, the Cigna Defendants and Tides Foundation were represented by Warren Haskel, Lauren Forsythe, and Richard Diggs, and the Slalom Defendants were represented by David R. Garner. The court took the motions under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff S.F. is a participant in and E.F. is a beneficiary of S.F.'s employer-sponsored, self-funded plan—the Slalom Plan—governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq*. Plaintiff J.S. is a participant in and R.R. is a beneficiary of J.S.'s employer-sponsored, fully funded plan—the Tides Plan—also governed by ERISA. E.F. and R.R. both received treatment at outdoor youth programs located in Utah. E.F. received medical care and treatment at Open Sky Wilderness Therapy from October 5, 2019, to January 1, 2020. R.R. received medical care and treatment at Evoke at Entrada from November 3, 2020, to February 8, 2021. Both programs are licensed and accredited outdoor youth programs by the State of Utah and provide comprehensive inpatient treatment for mental health and substance use disorders.

Cigna is an insurance company designated as the third-party claims administrator for both Plans. Cigna denied coverage for E.F.'s and R.R.'s treatment at the outdoor youth programs under their respective Plans based on exclusions in the Plans for "experimental, investigational, and unproven services." Both Plans delegate to Cigna "discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan," which "include[s], but [is] not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, [and] the determination of whether a person is entitled to benefits under the plan."

Both Plans specify that a service is not covered if it falls under any of the plans' "Exclusions and Expenses Not Covered." Each Plan excludes healthcare expenses "for or in connection with experimental, investigational or unproven services" ("EIU"). The exclusion includes: "medical, surgical, diagnostic, psychiatric, substance use disorder or other health care

technologies, supplies, treatments, procedures, drug or biologic therapies or devices that are determined by the utilization review Physician to be . . . not demonstrated, through existing peer-reviewed, evidence-based, scientific literature to be safe and effective for treating or diagnosing the condition or Sickness for which its use is proposed."

In determining whether services fit within the Plans' respective definitions of EIU services, "the utilization review Physician may rely on the clinical coverage policies maintained by Cigna or the Review Organization." These policies include the Complementary and Alternative Medicine ("CAM") policy, a publicly available medical coverage policy that Cigna applied to Plaintiffs' claims. The CAM Policy applies to "health benefit plans administered by Cigna Companies" and describes why certain "complementary or alternative medicine diagnostic testing methods, systems, therapies or treatments [are] considered experimental, investigational or unproven."

The CAM Policy states that "wilderness therapy" is "a multi-faceted program, consisting of outdoor life and various sequenced tasks and challenges . . . [that] seeks to enhance the restorative qualities of nature combined with structured individual and group-based therapeutic work." The CAM Policy analyzes several studies on wilderness therapy and finds that "[s]tudies investigating the effectiveness of wilderness therapy have primarily been in the form of case series with small heterogeneous patient populations, reporting short-term effects and investigating various outcome measures. Overall, studies on [wilderness therapy] have not provided detailed program descriptions and guiding theories." Based on this review, the CAM Policy concludes that "[t]he efficacy of [wilderness therapy] across programs and populations and how the treatment stimulates change has not been established."

The CAM Policy also explains that "outdoor youth programs" "can be described as teaching and/or learning and/or experiencing in an outdoor and/or out-of-school environment."

3

Similar to wilderness therapy, the CAM Policy analyzes numerous studies on outdoor youth programs and finds "[e]vidence on the effect of these programs on physical activity and mental health were lacking." Generally, "the key components of [outdoor youth] programs and the benefits gained by participants have not been established." Based on those findings, the CAM Policy concludes that "[t]here is insufficient evidence to support the clinical effectiveness of outdoor youth programs."

      S.F. requested coverage for E.F.'s treatment at Open Sky Wilderness Therapy as "intermediate behavioral health." On May 1, 2020, Cigna informed S.F. that based on its review of the information S.F. submitted and the terms of the Slalom Plan, it could not approve coverage for the requested service because the wilderness therapy program falls under the exclusion category for experimental, investigational, and unproven ("EIU") services. Cigna also explained that while the Slalom Plan did not cover wilderness therapy, claims for therapeutic services rendered by an independently licensed health care professional for the treatment of mental health and/or substance use disorder while residing at the wilderness program could be submitted for coverage.

      S.F. appealed Cigna's determination because Open Sky was licensed by the appropriate state regulatory agencies and outdoor youth programs had been issued a unique revenue code by the National Uniform Billing Committee to use in billing payors for their services. Based on the terms of the Slalom Plan and the CAM Policy, Cigna upheld the denial of benefits. While the Slalom Plan provides for a second level appeal to an independent review organization ("IRO"), S.F. does not allege that he pursued this second-level appeal.

      J.S. requested coverage for R.R.'s treatment at Evoke at Entrada from November 3, 2020, to February 8, 2021 as "Intermediate Behavioral Health." On September 10, 2021, Cigna informed J.S. that the services fell under the EIU exclusion and were not covered under the Tides Plan.

Cigna also told J.S. that while the Plan did not cover the services, claims for the treatment of mental health and/or substance use disorder from an independently licensed health care professional while residing at the wilderness program could be submitted for coverage.

      J.S. appealed, contending that Cigna improperly determined that Evoke was an EIU service because Evoke was licensed and accredited by the State of Utah, the CAM Policy did not apply to the billing codes applicable to R.R.'s treatment, and peer-reviewed literature demonstrates that outdoor youth programs offer proven and effective treatment interventions. Cigna upheld the denial of coverage, again concluding that outdoor youth programs and wilderness therapy programs fall within the EIU exclusion. While the Tides Plan provides for a second-level review with an IRO specific to EIU denials, Plaintiffs do not allege that J.S. filed any such appeal for coverage of R.R.'s treatment at Evoke.

      Cigna stopped providing claims administration services to the Slalom Plan on December 30, 2020.

## DISCUSSION

### Cigna's Motion to Dismiss

      Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Cigna moves to dismiss Plaintiffs' causes of action for ERISA benefits, for violations of the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"), and for declaratory judgment. More specifically, Cigna argues that the court should dismiss Plaintiffs S.F. and E.F.'s claims for lack of standing because Cigna is no longer an administrator for the Slalom Plan, dismiss Plaintiffs' ERISA benefits claims for failure to exhaust administrative remedies, dismiss Plaintiffs' Parity Act claims because the Plains' EIU exclusion applies the same to medical, surgical, and behavioral care, and dismiss Plaintiff's declaratory judgment cause of action as repetitive of Plaintiff's ERISA claims.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges whether a court has subject matter jurisdiction over the case. A factual challenge to jurisdiction "goes beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction depends." *Francisco S. v. Aetna Life Ins.*, 2019 WL 1358858, at *2 (D. Utah Mar. 26, 2019). "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1) . . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), determines whether a claim has facial plausibility based on the allegations of the complaint. *Kerry W. v. Anthem Blue Cross & Blue Shield*, 2019 WL 2393802, at *2 (D. Utah June 6, 2019). On a Rule 12(b)(6) motion, however, the Court can consider documents referred to in the Complaint that are central to the plaintiff's claim and their authenticity is not in dispute. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). In this case, the court can consider the terms of the Plans, the CAM Policy, and the denial letters for Plaintiffs' claims because those documents are referred to in the First Amended Complaint, their authenticity is not in dispute, and they are central to Plaintiffs' claims.

### 1. Standing

Cigna first argues that S.F. and E.F. cannot bring their ERISA claims against Cigna because they do not have Article III standing. Article III standing requires Plaintiffs to demonstrate that a favorable decision will likely redress the alleged injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Courts have held that plaintiffs lack standing to raise ERISA claims against a former claims administrator because the former claims administrator can no longer provide any

6

redress related to the plan. *Hall v. Lhacol*, 140 F.3d 1190, 1196 (8th Cir. 1998).

Plaintiffs do not dispute that Cigna is no longer the claims administrator for the Slalom Plan. Plaintiffs argue that although Cigna ceased being the administrator of the Slalom Plan on December 30,2020, Plaintiffs' claim originated on May 1, 2020. Plaintiffs argue that S.F. and E.F. have standing to bring a claim against Cigna because Cigna was a fiduciary over the Slalom when their claim was denied. Cigna was the claims administrator of the Slalom Plan, not the Plan administrator. But even if Cigna was the Plan administrator when the claim was decided, S.F. and E.F. still need to demonstrate that Cigna can provide redress for Plaintiffs' claims.

Cigna's prior role with the Slalom Plan does not give S.F. and E.F. standing when Cigna has no current role with the Plan and no ability to give them redress for any ERISA claim they bring. Plaintiffs argue that Cigna's lack of a current role should not absolve Cigna from liability for a breach of fiduciary duty arising from its prior role with the Slalom Plan. But that is not the law. As the Eighth Circuit explained in *Hall*, relief to remedy prior or future plan behavior "could be had only against the Plan itself or the current Plan Administrator." *Id.* The former claims administrator "is in no position, where it is no longer associated with the Plan, to pay out benefits . . . even if those benefits should have been paid sooner. Only the Plan and the current plan administrator can pay out benefits . . . . Furthermore, an injunction requiring payment of plan benefits must be directed at an entity capable of providing the relief requested." *Id.*

Here, Cigna no longer provides the Slalom Plan with administrative services, Cigna has no control over current or future claims determinations, and it no longer has access to the Slalom Plan's funds to pay claims, like those asserted in this case. Plaintiffs cannot obtain from Cigna the relief it seeks under any of its counts.

While Plaintiffs suggest that the Court should defer this issue to the merits phase because

it's a question of "statutory standing," they ignore that a factual challenge to Article III standing is a jurisdictional defect and properly addressed through Rule 12(b)(1). To the extent that Plaintiffs believe Cigna misstated any facts in support of its Rule 12(b)(1) motion, Plaintiffs could have controverted that with their own evidence or asked for discovery to disprove it. But Plaintiffs did neither. Plaintiffs cannot create a factual issue on standing by pointing to their allegations about when the Plans' exclusions of outdoor youth programs may apply. Whether and when Cigna may have applied any of the Plan's exclusions to different categories of treatment is irrelevant to whether Cigna is a proper defendant in a case challenging those exclusions when it is no longer involved with the Slalom Plan. Because there is no question of fact as to whether Cigna can provide any redress to S.F. and E.F. under the Slalom Plan, the court dismisses S.F. and E.F.'s claims against Cigna for lack of standing under Federal Rule of Civil Procedure 12(b)(1).

    2. **Exhaustion**

Cigna further argues that Plaintiffs' ERISA benefits claims should be dismissed because neither set of Plaintiffs did a second-level appeal and thus failed to exhaust their administrative remedies under the Plans. While "'ERISA contains no explicit exhaustion requirement,' the 'exhaustion of administrative (i.e., company-or plan-provided) remedies is an implicit prerequisite to seeking judicial relief.'" *Eschler v. The Lincoln Nat'l Life Ins.*, 2020 WL 6450509, at *4 (D. Utah Nov. 3, 2020).

Plaintiffs argue that they properly alleged that they complete the appeals process. However, Plaintiffs do not cite to an allegation in the Amended Complaint making such an allegation, and the court cannot find any such allegation in the Amended Complaint. The Tenth Circuit has explained that where a plaintiff has failed to allege exhaustion, the issue is "properly decided on the pleadings." *Karls v. Texaco, Inc.*, 139 F. App'x 29, 33 (10th Cir. 2005). The factual

allegations in the Amended Complaint demonstrate that Plaintiffs both engaged in only one level of appeal.

Plaintiffs argue that the second-level appeals in both Plans were voluntary. Plaintiffs first argue that the IRO appeals were voluntary because they were beyond the second level of appeal and ERISA only requires a plaintiff to go through two levels of appeals. Plaintiffs contend that requiring them to complete extra levels of appeal, beyond the two required by 29 C.F.R. 2560.503-1(c)(2), violates ERISA's claims procedure regulations. But there is nothing in the record to support Plaintiffs' contention that they completed two levels of appeal before the IRO appeals were offered. Based on the allegations in the Amended Complaint and the provisions of the Plans, the IRO-level appeals were the second level of appeals that ERISA allows.

Plaintiffs next argue that the Plans did not require them to do the IRO appeals because the Plans used the language "may," indicating that the appeal was voluntary. Even though the text states that members may file an appeal if they are unsatisfied with the decision on their first appeal, it does not state that members can simply skip the step before bringing an ERISA claim in court. A member does not need to pursue any appeal. But if they want to file a lawsuit, they need to exhaust the two levels of appeals in the plan. Both Plans state that a plaintiff should only "bring a civil action under section 502(a) of ERISA if [they] are not satisfied with the outcome of the 'Appeals Procedure.'" The Plan makes clear that the "Appeals Procedure" includes both levels of appeal. Therefore, while the Plans do not require a member to file a second level appeal, if the member wants to bring a lawsuit, the member must complete both levels of appeals.

District courts abstain from applying the exhaustion requirement under only two circumstances: when (1) resorting to administrative remedies would be futile; or (2) the remedy provided is inadequate. *Eschler*, 2020 WL 6450509, at *4. In this case, both Plans had an

9

additional administrative remedy available to Plaintiffs that they do not allege they pursued. Both Plans provided for a second level appeal with an IRO. Plaintiffs cannot allege that the second level appeal would have been futile or somehow inadequate because it would have been with an IRO. Plaintiffs may have obtained some relief had they pursued their arguments with an IRO.

Because ERISA requires Plaintiffs to exhaust administrative remedies before they may pursue an ERISA benefits claim in court, and Plaintiffs did not engage in the second-level appeal process provided for in the Plans, the court dismisses Plaintiffs' ERISA benefits claims for failure to exhaust administrative remedies.

### 3. Parity Act Claim

Cigna also argues that Plaintiffs' Parity Act claim should be dismissed because the allegations in the Amended Complaint fail to state a claim under the requirements of the Parity Act. Congress enacted the Parity Act, an amendment to ERISA, "'to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans.'" *E.W. v. Health Net Life Ins.*, 86 F.4th 1265, 1280 (10th Cir. 2023) (citation omitted). Assuming that private parties may assert a claim under the Parity Act because the question of the viability of such a claim was uncontested, the Tenth Circuit recognized that the Parity Act "imposes coverage requirements on 'a group health plan . . . that provides both medical and surgical benefits and mental health or substance use disorder benefits.'" *Id.* at 1281 (quoting 29 U.S.C. § 1185a(a)(3)(A)). The relevant coverage requirements ensure "that: (1) 'treatment limitations applicable to . . . mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage)'; and (2) 'there are no separate treatment limitations that are

10

applicable only with respect to mental health or substance use disorder benefits.'" *Id.*

In *E.W.*, the Tenth Circuit recognized that no Circuit has defined the elements of a Parity Act claim. *Id.* The court then proceeded to apply a test the parties agreed to at oral argument that represented combined elements used in caselaw from this District. *Id.* at 1283. Under this test, "a plaintiff must (1) plausibly allege that the relevant group health plan is subject to MHPAEA; (2) identify a specific treatment limitation on mental health or substance-use disorder benefits covered by the plan; (3) identify medical or surgical care covered by the plan that is analogous to the mental health or substance-use disorder care for which the plaintiffs seek benefits; and (4) plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations that defendants would apply to the medical or surgical analog." *Id.*

Under ERISA regulations, "[a] [treatment limitation includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment.'" *Id.* at 1281 (quoting 29 U.S.C. § 1185a(a)(3)(B)(iii). The Parity Act applies to both "quantitative treatment limitations" ("QTL") and "nonquantitative treatment limitations" ("NQTL"). 29 C.F.R. § 2590.712(a). "Whereas QTL 'are expressed numerically (such as 50 outpatient visits per year),' NQTL 'otherwise limit the scope or duration of benefits for treatment under a plan or coverage.'" *E.W.*, 86 F.4th at 1281. "With respect to NQTL, 'any processes, strategies, evidentiary standards, or other factors used in applying . . . [NQTL] to mental health or substance use disorder benefits' must be 'comparable to, and . . . applied no more stringently than, the [same factors] . . . used in applying the limitation with respect to medical/surgical benefits.'" *Id.* (quoting 29 C.F.R. § 2590.712(c)(4)(i)).

Under the test the Tenth Circuit applied in *E.W.*, "a plaintiff may challenge treatment limitations either facially or as applied." *Id.* at 1284 (citing 29 C.F.R. § 2590.712(c)(4)(i)). "A

11

facial challenge focuses on the terms of the plan." *Id.* "By contrast, as-applied challenges focus on treatment limitations that a plan applies 'in operation.'" *Id.* In a facial challenge, "[a] plaintiff must identify an express limitation on benefits for mental health or substance use disorder treatment and demonstrate a disparity compared to benefits for the relevant medical or surgical analogue." *Id.* "In an as-applied challenge, a plaintiff must plausibly allege that a 'defendant differentially applies a facially neutral plan term.'" *Id.* (citations omitted).

Plaintiffs' Amended Complaint alleges that Cigna discriminates against mental health claimants by categorically excluding all State of Utah licensed OYPs from coverage when it does not exclude analogous medical/surgical treatment. First, Plaintiffs allege that the Plans' language does not support the conclusion that OYPs are EIU services. Second, Plaintiffs allege that Cigna's categorical denial for licensed OYP treatment is not mirrored with an analogous denial for outdoor medical/surgical treatment in a sub-acute inpatient context. Third, Plaintiffs allege that Cigna discriminates by denying licensed OYP claims but carving out an exception for services "rendered by an independently licensed heath care professional" to be covered.

However, both Plans exclude any type of care that qualifies as "experimental, investigational, or unproven" on both the mental health and medical/surgical, and the CAM Policy broadly excludes wilderness therapy programs and outdoor youth programs, whether to treat medical, surgical, or mental health care. Therefore, the Plans' language does not provide Plaintiffs with a basis for a facial challenge under the Parity Act.

Plaintiffs argue that Cigna has used its CAM Policy as a pretext to deny a type of mental health or substance use disorder—OYPs—that does not actually meet the Plan's definition of EIU care. Plaintiffs assert that Cigna does not exclude analogous medical/surgical programs (skilled nursing facility or similar sub-acute inpatient care) as EIU and that this is a disparity that plausibly

12

violates the Parity Act. But Plaintiffs fail to allege any facts to support its speculation that Cigna applied different EIU criteria for mental health residential treatment than analogous medical or surgical treatment. The only factual allegations that Plaintiffs offer is that S.F. and J.S. voiced "doubts" that Cigna would deny care in a skilled nursing, rehabilitation, or hospice facility on the grounds that it was experimental or investigational, nor would Cigna deny most of the services provided but allow coverage for certain portions rendered by an "independently licensed health care professional" to be covered as Cigna had offered for E.F.'s and R.R.'s treatment. But those allegations are speculative and cannot support their Parity Act claim. While Plaintiffs speculate that the CAM Policy's guidelines seem narrowly tailored to apply only to programs that might treat mental health or substance use disorders, case law states that Plaintiffs' speculation cannot support an as-applied Parity Act claim where Plaintiffs offer no alleged facts about how Defendants treated analogous medical or surgical treatment differently.

Plaintiffs attempt to frame this case as one about Cigna denying coverage because services were provided in an outdoor setting, but Plaintiffs admit that Cigna informed both sets of Plaintiffs that the Plans would cover individual services for the treatment of a mental health condition and/or substance use disorder rendered by a licensed healthcare professional while residing at the wilderness program even though those covered services were provided in an outdoor setting. Therefore, the record established that Cigna was not denying benefits solely because the services were provided outdoors.

In addition, allegations about incorrect benefits decisions do not automatically state a Parity Act violation. Plaintiffs submitted a notice of a decision where the court examined Cigna's CAM Policy, its applicability to a plan exclusion for EIU services, and the court outlined a requirement that Cigna meaningfully engage with plaintiffs' arguments over the CAM Policy. *S.H.*

13

*and J.H. v. Cigna Health and Life Ins.*, No. 2:22-CV-552-TC, 2023 U.S. Dist. LEXIS 219267 (D. Utah Dec. 8, 2023). This court agrees with Judge Campbell's decision. However, in this case, Plaintiffs cannot claim that a failure to engage in a meaningful dialogue about the possible discriminatory effects of using the CAM Policy is a Parity Act violation while Plaintiffs did not engage in their second-level appeals with an IRO and themselves failed to allow for the opportunity to engage in a meaningful dialogue on the issue.

Plaintiffs' allegations about disparate treatment—like allegedly different licensing requirements, accreditation, and billing and revenue codes—also have nothing to do with the actual basis for why Plaintiffs' claims were denied, which was the lack of peer reviewed, evidence-based scientific support for the effectiveness of wilderness therapy or outdoor youth programs. As this court explained in *L.L.*, "a lack of licensing or accreditation was not the basis for the denial of benefits in this case." 2023 WL 2480053, at *4.

The court's ruling on Cigna's standing and failure to exhaust remedies also impacts Plaintiffs' Parity Act claims. Cigna is no longer in a position to give relief, such as plan reformation, with respect to the Slalom Plan. In addition, Plaintiffs' failure to pursue a second-level appeal with an IRO did not give Defendants the opportunity to fully address some of the arguments Plaintiffs allege amount to Parity Act violations.

Plaintiffs' Parity Act claim fails because they do not "plausibly allege a disparity between the treatment limitation on mental health benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog." *L.L.*, 2023 WL 2480053, at *2; *J.W.*, 2022 WL 2905657, at *5. Therefore, the court grants Cigna's Motion to Dismiss Plaintiffs' Parity Act claim.

### 4. Declaratory Relief Claim

Plaintiffs' declaratory judgment claim seeks a judicial declaration that Defendants are not permitted to categorically deny claims of outdoor youth programs. "When considering [a party's declaratory judgment] claims or counterclaims, if the court finds that they 'merely restate an issue already before the court, 'it is well settled that such repetitious and unnecessary pleadings should be stricken' or dismissed." *Onset Fin., Inc. v. Victor Valley Hosp. Acquisition, Inc.*, 2018 WL 1662611, at *3 (D. Utah Apr. 4, 2018).

In this case, Plaintiffs' Declaratory Judgment claim raises all the same issues as their ERISA and Parity Act claims, and seeking declaratory judgment on the same issues provides Plaintiffs with no rights in addition to those they have under ERISA and the Parity Act. Therefore, the court grants Cigna's Motion to Dismiss Plaintiffs' redundant declaratory judgment claim.

### The Plans' Motions to Dismiss

The Slalom Plan and the Tides Plan incorporated Cigna's arguments regarding exhaustion of administrative remedies and dismissal of the Parity Act claim. Because the court has granted Cigna's Motion to Dismiss Plaintiffs' ERISA benefits claim for failure to exhaust administrative remedies, Plaintiffs' Parity Act claim, and Plaintiff's redundant declaratory relief claim, the court dismisses these claims against the Slalom Plan and Tides Plan as well.

### CONCLUSION

Based on the above reasoning, Defendants Cigna Health and Life Insurance Company and Cigna Behavioral Health, Inc.'s (collectively "Cigna") Motion to Dismiss the First Amended Complaint [ECF No. 30] is GRANTED, Defendant Slalom LLC Healthcare Benefit Plan's Motion to Dismiss First Amended Complaint [ECF No. 39] is GRANTED, and Defendant The Tides

Foundation Health & Welfare Plan's Motion to Dismiss the First Amended Complaint [ECF No. 49] is GRANTED. Because this order dismisses all of Plaintiffs' claims against all the Defendants, the Clerk of Court is directed to enter judgment and close the action.

DATED this 1st day of May 2024.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge